UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PETERBILT OF INDIANA, INC., ) | |
|   Plaintiff/Counter-Defendant, ) | |
| ) | |
|  vs. ) | 1:12-cv-769-JMS-DKL |
| ) | |
| UTILITY TRAILERS OF INDIANAPOLIS, INC., et ) | |
| al., ) | |
|   Defendants/Counter-Plaintiffs. ) | |

**ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Presently pending before the Court are cross-motions for summary judgment filed by Plaintiff/Counter-Defendant Peterbilt of Indiana, Inc. ("Peterbilt") and Defendants/Counter-Plaintiffs Utility Trailers of Indianapolis, Inc. ("UTI") and Harold Riddle (collectively, the "Defendants"). For the reasons that follow, the Court grants in part Peterbilt's motion and denies the Defendants' motion.

**I.**
**STANDARD OF REVIEW**

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also

support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.

That cross-motions for summary judgment have been filed does not automatically mean that all questions of material fact have been resolved. *Franklin v. City of Evanston*, 384 F.3d 838, 842 (7th Cir. 2004). The Court must evaluate each motion independently, making all reasonable inferences in favor of the non-moving party with respect to each motion. *Id.* at 843.

After having assessed the claims of the parties in accordance with the standards outlined above, the Court concludes that Peterbilt is entitled to summary judgment. Therefore, the facts detailed below contain all reasonable inferences in favor of the Defendants. *See Celotex*, 477 U.S. at 330 n.2.

## II.
### BACKGROUND

Peterbilt, a wholly-owned subsidiary of JX Enterprises, Inc. ("JX"), is a privately held corporation that owns a group of full-service truck dealerships and support services. [Dkt. 49-1 at 1 ¶¶ 2-3.] UTI sells and services new and used trucks manufactured by various entities, including Peterbilt. [Dkts. 21 at 3 ¶ 8; 49-1 at 6.] Mr. Riddle is the sole shareholder of UTI. [Dkt. 21 at 2 ¶ 4.]

On July 15, 2011, JX entered into an Asset Purchase Agreement ("the Agreement") with the Defendants, whereby JX would purchase certain assets from the Defendants. [*Id.* at 4 ¶ 12.] JX later assigned all of its rights under the Agreement to Peterbilt. [Dkt. 49-1 at 1 ¶ 5.]

Through the Agreement, the parties agreed that the exact amount of certain assets at issue "will not be known as of the Closing Date, that the Closing Payment paid at the Closing is an estimate of the Purchase Price, and that it may need to be adjusted subsequent to the Closing Date on the basis set forth herein." [*Id.* at 12 (Section 1.6).] Section 1.6 of the Agreement provides a mechanism for determining the contemplated purchase price adjustment:

> 1.6. <u>Post-Closing Adjustment</u>. . . . [A]s soon as practicable following the Closing Date, but in no event later than ninety (90) days after the Closing Date (the "Adjustment Period"), [Peterbilt] shall conduct a physical inventory . . . [and] shall prepare and deliver to the [Defendants] a statement setting forth its determination of the Purchase Price (the "Purchase Price Adjustment"). . . . If the [Defendants do] not agree to the Purchase Price Adjustment, then within thirty (30) days after receipt thereof, it shall notify [Peterbilt] in writing of any discrepancy in, or disagreement with, the items reflected thereon. Upon agreement by [Peterbilt] regarding the adjustment requested by the [Defendants], an appropriate adjustment shall be made thereto. If the [Defendants do] not make any objection during such thirty (30) day period, the Purchase Price Adjustment shall be conclusively deemed to be accepted in the form presented to the [Defendants], and shall be binding and conclusive upon the parties hereto . . . . If [Peterbilt] does not agree, within twenty (20) days after receipt of the [Defendants'] notice of the requested adjustment to the Purchase Price Adjustment, the disputed items or amounts shall be submitted for review and final determination by RSM McGladrey, Inc. (the "Independent Accounting Firm"). The determination of the

> Independent Accounting Firm shall be made as promptly as practical and shall be binding and conclusive upon the parties hereto for purposes hereof, shall not be subject to further review or appeal, and judgment thereon may be entered in any court of competent jurisdiction.

[*Id.*]

On January 4, 2012, Peterbilt informed the Defendants that it had determined that the purchase price adjustment should be $732,928 in its favor under the Agreement.[1] [Dkt. 49-1 at 2, 53-55.] Twenty-six days later, on January 30, 2012, the Defendants responded disagreeing with Peterbilt's calculation and instead concluding that Peterbilt owed them $142,734. [*Id.* at 60.]

Seventeen days after the Defendants' response, on February 16, 2012, Peterbilt informed the Defendants in writing that "we do not agree with the vast majority of your requested adjustments." [*Id.* at 61.] Peterbilt told the Defendants that if the parties could not resolve the dispute by February 20, 2012, "we will be contacting RSM McGladrey's Chicago office to submit the adjustments for their review and final determination." [*Id.*]

On February 20, 2012, Mr. Riddle emailed Eric Jorgensen and informed him that he would like to meet in person to "work this out." [*Id.* at 70.] Mr. Riddle requested that he be given three or four days of notice before the meeting. [*Id.*] Mr. Jorgensen responded that it was Peterbilt's intent to engage RSM that day but that "we will wait another few weeks to do so for this meeting." [*Id.* at 70.] Mr. Riddle and Mr. Jorgensen met on March 7, 2012, but ultimately were unable to resolve the dispute regarding the purchase price adjustment. [*Id.* 71.] The following day, Peterbilt contacted RSM "to secure its engagement to resolve the purchase price adjustment

---

[1] JX actually submitted its determination to the Defendants because it had not yet assigned its rights to Peterbilt. [*See* dkt. 49-1 at 53-55 (demand on JX letterhead).] There is no dispute that Peterbilt is the proper party, however, so for simplicity the Court will refer to Peterbilt instead of JX.

dispute." [*Id.* at 3 ¶ 16.] The Defendants, however, refused to submit the dispute to RSM. [*Id.* at ¶ 17.] Peterbilt contends that the dispute cannot be officially submitted to RSM without the cooperation of the Defendants. [Dkt. 24 at 8 ¶ 95.]

On June 5, 2012, Peterbilt filed its Complaint against the Defendants, alleging claims for specific performance and breach of contract. [Dkt. 1.] The Defendants answered and counterclaimed, seeking a declaratory judgment that by not submitting the dispute to RSM within twenty days of the Defendants' counteroffer, Peterbilt had accepted the Defendants' counteroffer. [Dkt. 21 at 21.]

Both parties now move for summary judgment. [Dkts. 49; 63.] Peterbilt's motion is a partial motion for summary judgment on its specific performance claim and on the Defendants' counterclaim for declaratory relief. [Dkt. 49 at 1 ¶¶ 1-2 (requesting judgment on Count I of Peterbilt's Complaint for specific performance and on Defendants' counterclaim for declaratory relief).] The Defendants' motion is a motion for summary judgment on their counterclaim for declaratory relief. [Dkt. 63 at 1.]

### III.
#### DISCUSSION

#### A. Interpreting the Agreement

The parties do not dispute that the Agreement is an enforceable contract. Instead, the parties' primary dispute is whether Section 1.6 of the Agreement is ambiguous. Peterbilt claims that Section 1.6 requires the Court to issue an order compelling the Defendants to participate in dispute resolution with RSM because Peterbilt timely disputed the Defendants' counteroffer, automatically triggering dispute resolution before RSM. [Dkt. 50 at 16-17.] The Defendants, however, contend that by not engaging RSM within twenty days of the Defendants' counteroffer, Peterbilt has accepted the counteroffer and there is no dispute for RSM to resolve. [Dkt. 64 at 2.]

The Court is exercising diversity jurisdiction over the parties' claims, [dkt. 39]; therefore, state law provides the substantive principles that guide the Court's analysis,[2] *BKCAP, LLC v. Captec Franchise Trust 2000-I*, 572 F.3d 353, 359 (7th Cir. 2009).  The parties' Agreement contains an Indiana choice-of-law provision, [dkt. 49-1 at 42 ¶ 10.8]; therefore, the Court will apply Indiana law.

As a general rule, interpretation of a written contract is a question of law for which summary judgment is particularly appropriate. *Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.*, 270 F.3d 1117, 1123 (7th Cir. 2001); *Tri-Central High Sch. v. Mason*, 738 N.E.2d 341, 344 (Ind. Ct. App. 2000).  The goal of contract interpretation is to ascertain and give effect to the parties' intent, as reasonably manifested by the language of the agreement. *Reuille v. E.E. Brandenberger Const., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008).  "Indiana follows 'the four corners rule' that extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction." *Univ. of S. Indiana Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006).  "Clear and unambiguous terms in the contract are deemed conclusive, and when they are present [the Court] will not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions." *Ryan v. Ryan*, 972 N.E.2d 359, 364 (Ind. 2012).  An ambiguity does not arise simply because the parties disagree on the interpretation; instead, "language is ambiguous only if reasonable people could come to different conclusions about its meaning." *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008) (citing *Simon Prop. Group, L.P. v. Mich. Sporting Goods Distrib., Inc.*, 837 N.E.2d 1058, 1070 (Ind. Ct. App. 2005)).

---

[2] The parties dispute the applicability of the Federal Arbitration Act and the Indiana Uniform Arbitration Act, [dkts. 50 at 9-14; 64 at 7-9, 13-14], but the Court finds it unnecessary to discuss those statutes and, instead, focuses on the language of the parties' contract.

Peterbilt asks for summary judgment on its claim for specific performance. Specific performance is an equitable remedy that the trial court may grant in its discretion. *Salin Bank & Trust Co. v. Violet U. Peden Trust*, 715 N.E.2d 1003, 1007 (Ind. Ct. App. 1999); *see also United States v. Apex Oil Co., Inc.*, 579 F.3d 734, 736 (7th Cir. 2009) (noting that specific performance is a type of injunction and, therefore, an equitable remedy) (referencing Indiana law). "The grant of specific performance directs the performance of a contract according to, or substantially in accordance with, the precise terms agreed upon." *Kesler v. Marshall*, 792 N.E.2d 893, 896 (Ind. Ct. App. 2003). Courts will only order specific performance when the contract is capable of being performed. *UFG, LLC v. Southwest Corp.*, 848 N.E.2d 353, 361 (Ind. Ct. App. 2006). The parties do not dispute 1) that Peterbilt timely offered its initial calculation regarding the purchase price adjustment to the Defendants; 2) that the Defendants timely notified Peterbilt that they disagreed by making a counteroffer; 3) that Peterbilt timely notified the Defendants that it disagreed with the counteroffer; or 4) that neither party submitted the dispute to RSM within twenty days of the Defendants' counteroffer. The parties do, however, disagree on the ramifications of those undisputed facts. Specifically, Peterbilt contends that since it notified the Defendants that it disputed their counteroffer within twenty days, the dispute must automatically be submitted to RSM to resolve. [Dkt. 50 at 16-17.] The Defendants contend that because Peterbilt did not submit the dispute to RSM within twenty days of the Defendants' counteroffer, Peterbilt accepted the counteroffer and there is no dispute for RSM to resolve. [Dkt. 64 at 2.]

The key provision of the Agreement provides that if Peterbilt "does not agree, within twenty (20) days after receipt of the [Defendants'] notice of the requested adjustment to the Purchase Price Adjustment, the disputed terms or amounts shall be submitted for review and final determination by RSM McGladrey, Inc. (the 'Independent Accounting Firm')." [Dkt. 49-1 at 12

¶ 1.6.] The Court concludes that this provision unambiguously requires the parties' dispute to automatically be submitted to RSM once a dispute over the purchase price adjustment is timely identified. Specifically, the Court concludes that the clause imposing the twenty-day deadline modifies the preceding phrase, such that any disagreement by Peterbilt must occur within twenty days. If that condition is met, and the parties agree that it was, the Agreement requires the dispute to be submitted to the accounting firm for resolution. Importantly, the provision does not place the burden to initiate that process on either party. As Peterbilt points out, either party could have claimed it was entitled to a price adjustment in its favor, so the provision does not place the burden on a specific party. [Dkt. 71 at 3-4.] The Defendants' interpretation erroneously adds a condition to the Agreement by placing the burden on Peterbilt to submit the dispute to RSM. Although the Defendants cite various emails between the parties that they contend support their interpretation, the Court will not consider extrinsic evidence because the Agreement is unambiguous. *Ryan*, 972 N.E.2d at 364. Instead, under the unambiguous language of the Agreement, the dispute resolution provision is automatically triggered by the parties' timely dispute over the purchase price adjustment.

For these reasons, the Court concludes that Peterbilt is entitled to summary judgment on its specific performance claim against the Defendants as well as on the Defendants' counterclaim.

### B. Remaining Issues

In a footnote of its motion, Peterbilt argues that it is entitled to costs and attorney's fees under the Agreement if the Court finds that it is entitled to specific performance. [Dkt. 50 at 20 n.4.] Peterbilt requests leave to file an affidavit in support of its fee request if the Court orders specific performance. [*Id.*] But in support of its request, Peterbilt argues that the Defendants'

"breach" of the Agreement is what entitles it to costs and fees. [*Id.*; dkt. 71 at 14.] Peterbilt did not move for summary judgment on its breach of contract claim, [dkts. 49 at 1 ¶¶ 1-2 (requesting judgment on Count I of Peterbilt's Complaint for specific performance and on Defendants' counterclaim); 1 at 9], and for the reasons detailed in a show cause order the Court issues contemporaneously with this decision, it appears that the breach of contract claim must be dismissed because Peterbilt successfully pursued specific performance, *see UFG, LLC v. Southwest Corp.*, 848 N.E.2d 353, 361-62 365 (Ind. Ct. App. 2006) (discussing the election of remedies doctrine, noting that "specific performance and legal damages are inconsistent remedies," and holding that "[s]pecific performance erases the breach and precludes damages at law"). Since specific performance "erases the breach," Peterbilt cannot recover legal damages such as attorney's fees that would arise from the breach. *Id.* at 365. Thus, the Court denies Peterbilt's request for costs and attorney's fees under the Agreement.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **GRANTS IN PART** Peterbilt's Motion for Partial Summary Judgment, [dkt. 49], and **DENIES** the Defendants' Motion for Summary Judgment, [dkt. 63]. Accordingly, the Court 1) enters summary judgment in favor of Peterbilt on Count I of Peterbilt's Complaint (Specific Performance); 2) enters summary judgment in favor of Peterbilt on the Defendants' counterclaim; 3) orders the parties to specifically perform Section 1.6 of the Agreement by allowing RSM to resolve their dispute over the purchase price adjustment; and 4) denies Peterbilt's request for costs and attorney's fees under the Agreement. Contemporaneously with this decision, the Court issues an order requiring Peterbilt to show cause why its breach of contract claim should not be dismissed and final judgment entered accordingly.

06/12/2013

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Wendy K. Arends
GODFREY & KAHN, S.C.
780 N. Water Street
Milwaukee, WI 53202

Erin M. Cook
GODFREY KAHN, S.C.
mcook@gklaw.com

John Lentz Kirtley
GODFREY & KAHN
jkirtley@gklaw.com

Vilda Samuel Laurin III
BOSE MCKINNEY & EVANS, LLP
slaurin@boselaw.com

Richard A. Mann
rmann@richardmann-lawoffice.com

Joel T. Nagle
BOSE MCKINNEY & EVANS, LLP
jnagle@boselaw.com

Todd Douglas Small
RICHARD A. MANN, P.C.
tsmall@richardmann-lawoffice.com